UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Lea E. Johnson and Samantha J. Johnson, | No. 21-cv-2760 (KMM/ECW) |
| Plaintiffs, | |
| v. | **ORDER** |
| Freedom Mortgage Corporation, | |
| Defendant. | |

Plaintiffs Lea E. Johnson and Samantha J. Johnson (the "Johnsons") brought this action against Defendant Freedom Mortgage Corporation ("Freedom Mortgage") alleging that Freedom Mortgage furnished inaccurate information to credit reporting agencies and then failed to conduct a reasonable reinvestigation after receiving notice of the Johnsons' dispute in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* [Compl. ¶ 3, ECF No. 1]. Freedom Mortgage has moved for summary judgment. [ECF No. 80]. For the reasons discussed below, the Court grants Freedom Mortgage's motion.

I. **Factual Record**

On October 4, 2019, the Johnsons obtained a mortgage loan in the amount of $244,293.00. [Compl. ¶ 47; Lea Johnson Dep. 11, ECF No. 86-2; ECF No. 83, Ex. 1 (Mortgage note)]. The loan was secured by a purchase money mortgage on property located at 83XX 80th Street S., Cottage Grove, Minnesota 55016 (the "Loan"). [Lea Johnson Dep. 8–9]. The servicing of the Loan was transferred to Freedom Mortgage on November 28, 2019. [Lea Johnson Dep. 11]. In accordance with the terms of the loan, the Plaintiffs owed

$1,595.12 on May 1, 2020, for their May 2020 mortgage payment. [Freedom Welcome Pkt, ECF No. 83-1 at 33].

The Johnsons filed for bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota on March 20, 2020. [Compl. ¶ 48; Lea Johnson Dep. 11; Bankr. Filings, Ex. A, ECF No. 86-1]. The Johnsons then entered into an agreement on May 8, 2020, with Freedom Mortgage to reaffirm their mortgage debt ("Reaffirmation Agreement"), taking the mortgage outside of the bankruptcy estate, and making the Johnsons personally liable for the loan's ongoing payments. [ECF No. 88, Ex. 4 (Loan Reaffirmation Documents)]. The Johnsons committed to making monthly payments of $1,595.12 towards the Loan on the first of each month, in accordance with the Reaffirmation Agreement's terms.

Freedom Mortgage required a loan number be written on the method of payment to process payments and specifically advised borrowers of this requirement. For instance, in the opening welcome packet, Freedom Mortgage advised borrowers:

> Payments by Mail - To avoid processing delays make your check or money order payable to Freedom Mortgage **and include your loan number**. Please do not send cash or correspondence with your payment.

[*See* Lea Johnson Dep. 24 (quoting mortgage statement document) (emphasis added); *see also* Freedom Welcome Packet, Ex. 2 at 1, ECF No. 83-1]. Each of the monthly statements sent to the Johnsons included these same requirements. [Freedom Statement, Ex. 3, ECF No. 83-1 at 31–34].

In preparation for making the mortgage payment due May 1, 2020, plaintiff Samantha Johnson obtained a cashier's check for $1,596.00 from Bell Bank on April 28, 2020, which was made out to Freedom Mortgage Corporation (the "April check").



[April check, Douglass Decl., Ex. 6, ECF No 83-1 at 62]. Lea Johnson testified that she also included a piece of paper with the Johnsons' account number and address in the envelope along with the check. [Lea Johnson Dep. 33–34]. The April check itself did not contain any identifying information linking the payment to the Johnsons' loan, such as the loan number.[1] [Tanya Tarver Dep. 67, Ex. 7, ECF No. 86-3]. The amount of the April check case was not the exact amount the Johnsons had agreed to pay, being rounded up to $1596.00 from $1595.12.

As a result of the Johnsons not including any identifying information tying the payment to the Johnsons' loan on the April Check, Freedom Mortgage did not apply the check to their account. [Tarver Dep. 67]. Freedom Mortgage deemed the April check nonconforming because it could not credit the funds to an identified account. Freedom

---

[1] The image of the check included in this Order eliminates the account and routing information for the Johnsons' bank account for privacy reasons, but the Court has not eliminated any memo line from the check.

Mortgage ultimately returned the April check to Bell Bank without cashing it. [Joe Murphy Dep. 75, Ex. 8, ECF No. 83-1; Kylie Schlecht Dep. 78, Ex. 9, ECF No. 83-1]. At the time of the May payment, Freedom Mortgage was servicing loans for 34 different borrowers named Samantha Johnson. [Tarver Dep. 67].

The Johnsons learned that Freedom Mortgage had not processed their April 2020 mortgage payment when they received the following month's statement indicating that the account was past due. [Lea Johnson Dep. 34, 40]. On May 23, 2020, the Johnsons contacted Freedom Mortgage and inquired about the April check's status, a call that was recorded and about which notes were entered on a call log. [Murphy Dep. 70]. When asked by a Freedom Mortgage representative for the batch number or reference number listed on the April check, the Johnsons provided "#222649702" as the batch number and said that the check had been cashed by Freedom Mortgage. [Murphy Dep. 71]. The batch number that the Johnsons provided allegedly appeared on the Johnsons' Bell Bank account in connection with the check, but it did not appear anywhere on the check itself. [Lea Johnson Dep. 36].

Despite the Johnsons providing their full names, property address, a number of some sort, and the check amount during the call, Freedom Mortgage could not internally match the check to the Johnsons' account. [Murphy Dep. 71]. This is because during the call, the Johnsons said the check was cashed, and an investigation for a processed payment required Freedom Mortgage to search a specific database for cashed payments. [*Id.*]. Since it had not actually been cashed, this search was unsuccessful. [*Id.* at 71, 74].

4

Freedom instructed the Johnsons to write another check for the outstanding balance on their account. [Lea Johnson Dep. 36–37]. However, the Johnsons did not immediately have the money to make an additional mortgage payment. [*Id.* at 37]. When Freedom Mortgage returned the April check to Bell Bank, the Johnsons received a phone call stating that the check was returned for reasons unknown and that the Johnsons would need to come into the bank to get the check reissued. [*Id.*]. The Johnsons then utilized the proceeds from the returned April payment to purchase a new cashier's check to cover their outstanding mortgage payment six days later. [Schlecht Dep. 78]. Bell Bank produced a new check made payable to Freedom Mortgage for the Johnsons' May mortgage payment (the "May check"), and this time, the loan number was included on the face of the check. [*Id.*]. Freedom Mortgage processed the May check and applied it to the Johnsons' account on June 9, 2020. [Murphy Dep. 74].

At some point, the Johnsons learned that Freedom Mortgage was reporting them to credit reporting agencies ("CRAs") as having made their April 2020 mortgage payment late. [Lea Johnson Dep. 41]. Lea Johnson testified that she contacted Freedom Mortgage directly to discuss how their credit was being reported. [*Id.* at 44]. Specifically, Lea Johnson informed Freedom Mortgage that she received a statement that she was past due on the mortgage payment and that it was impacting her credit score and reflecting on her credit report, and she asserts that Freedom Mortgage took no action. [*Id.*]

Between October 3, 2020, and July 7, 2021, the Johnsons submitted several credit disputes to the CRAs concerning the Loan. [Disputes, Ex. 12, ECF No 83-1]. The Johnsons' dispute letter on October 3, 2020, to Equifax, their March 12–13, 2021, dispute

5

letter to Experian, and their July 3, 2021 dispute letter to TransUnion all contained the following information:

> I am writing you again regarding the late payment you're reporting for my Freedom Mortgage account. I have made all my payments on time so please correct this information immediately.

[*Id.*]. The dispute letters contained no additional information regarding the May payment, the April check, or the earlier investigation. In response to the Johnsons' complaints, the CRAs investigated. Equifax sent an Automated Credit Dispute Verification ("ACDV") to Freedom Mortgage regarding Samantha Johnson's account on October 3, 2020. [ECF No. 83-1 at 119–20]. In Freedom Mortgage's response to Equifax, Freedom verified the account as having been 30 days late in May 2020. [*Id.*]. Experian sent an ACDV to Freedom Mortgage regarding Lea Johnson's account on March 12, 2021. [ECF No. 83-1 at 117–18]. In its response to Experian, Freedom Mortgage provided the same response. [*Id.*]. Experian sent an ACDV to Freedom Mortgage regarding Samantha Johnson's account on March 13, 2021. [ECF No. 83-1 at 112–13]. In its response to Experian, Freedom Mortgage verified Samantha Johnson's account as being a month late the previous May. [*Id.*]. Trans Union sent an ACDV to Freedom Mortgage, regarding Samantha's dispute on July 3, 2021. [ECF No. 83-1 at 106]. In its response to Trans Union, Freedom Mortgage verified the information previously given. [*Id.* at 106]. Equifax sent two more ACDV's to Freedom Mortgage on July 7, 2021. [ECF No. 83-1 at 96]. And again, Freedom Mortgage verified the Johnsons' account as being 30 days late in May 2020. [*Id.*]. Freedom Mortgage investigated each dispute, and each time found its reporting to be

6

correct based on when the payment had been due, May 1, 2020, and when the payment was credited, June 9, 2020.

## II.    Legal Analysis

The Johnsons allege that Freedom Mortgage furnished inaccurate information to CRAs regarding their mortgage account and then failed to conduct a reasonable reinvestigation after receiving notice of the Johnsons' dispute in violation of the FCRA. Freedom Mortgage moves for summary judgment, arguing that the Johnsons' FCRA claims fail as a matter of law. Specifically, Freedom Mortgage alleges that its reporting of the May 2020 mortgage payment as being more than 30 days late was accurate. In addition, Freedom argues that it satisfied the FCRA by conducting a reasonable investigation regarding the complaints and inquiries made between October of 2020 and July of 2021. For the reasons set forth below, the Court concludes that there is no genuine dispute of material fact regarding the accuracy of Freedom Mortgage's reporting, and therefore summary judgement in favor of the defendant is appropriate.[2]

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Dowden v. Cornerstone Nat'l*

---

[2] Because the Court finds in favor of the defendant on the first issue raised by their summary judgment motion, it does not address the separate question of the reasonableness of the investigation.

*Ins. Co.*, 11 F.4th 866, 872 (8th Cir. 2021). The moving party bears the burden of demonstrating that the material facts are undisputed. *Celotex*, 477 U.S. at 322–23.

When a moving party properly supports a motion for summary judgment, the party opposing summary judgment may not rest on mere allegations or denials, but must show, through the presentation of admissible evidence, that specific facts exist in the record creating a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 710 (8th Cir. 2021). A fact is "material" only if its resolution could affect the outcome of the suit under the governing substantive law. *Anderson*, 477 U.S. at 248. A dispute of fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Courts must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *see also Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021).

### B. Fair Credit Reporting Act ("FCRA")

The FCRA requires furnishers, such as mortgage companies, to provide accurate information to CRAs. *See* 15 U.S.C. § 1681s-2(a). Specifically, data furnishers are prohibited from "furnish[ing] any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." *Id.* It also imposes duties on furnishers to conduct investigations when a dispute is raised about the information reported. The FCRA "'describes the duties of any entity which provides information to a Credit Reporting Agency when such entity

8

is notified of a dispute regarding the completeness or accuracy of the furnished information.'" *Meyer v. F.I.A. Card Servs., N.A.*, 780 F. Supp. 2d 879, 882–83 (D. Minn. 2011) (quoting *Johnson v. United States Dep't of Def.*, No. 99-cv-1699 (DWF/AJB), 2000 WL 33956225, at *3 (D. Minn. Oct. 17, 2000)). When a CRA contacts a furnisher of information, such as Freedom Mortgage, about disputed credit information, the furnisher "is obligated to 'conduct an investigation with respect to the disputed information' and report the results to the consumer reporting agency." *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 915 (8th Cir. 2014) (quoting § 1681s-2(b)). To fulfill this obligation, a furnisher is required to "review all relevant information provided by the consumer reporting agency" and, if it finds the disputed information to be inaccurate or incomplete, the entity is obligated to promptly modify or delete the inaccurate information. 15 U.S.C. § 1681s-2(b)(1)(B), (E)(ii).

Under the statute, once a mortgage company receives notice of a debtor's CRA dispute, it is required to "'conduct a reasonable investigation of [its] records to determine whether the disputed information can be verified.'" *Malm v. Household Bank (SB), N.A.*, No. 03-cv-4340 (ADM/AJB), 2004 WL 1559370, at *4 (D. Minn. July 7, 2004) (quoting *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004)). Generally, "whether an investigation is 'reasonable' under the FCRA is a question of fact for the jury." *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1039 (D. Minn. 2010). However, if a plaintiff is unable to demonstrate that the disputed debt information is inaccurate, the plaintiff will be unable to prevail on their FCRA claim. *See Peoples v. SunTrust Bank*, No.

17-cv-4235 (WMW/HB), 2018 WL 7020229, at *5 (D. Minn. Apr. 18, 2018) (holding that identifying inaccurate information is a requirement for relief under 1681s-2(b)).[3]

"Because a furnisher's obligation to conduct a reasonable investigation under § 1681s-2(b) arises when it receives a notice of dispute from a CRA, it need investigate only 'what it learned about the nature of the dispute from the description in the CRA's notice of dispute.'" *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905, 908 (8th Cir. 2011) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009)). Where a furnisher receives inaccurate or vague information regarding a consumer's dispute from a CRA, conducts an inquiry in response, and that response does not reveal that any inaccurate information was reported to a CRA, summary judgment may be appropriate on a reasonable-investigation claim. *Gorman*, 584 F.3d at 1157–59; *see also Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) ("[Furnisher's] investigation in this case was reasonable given the scant information it received regarding the nature of [plaintiff's] dispute.").

### C. Accuracy of Freedom Mortgage's Reporting

Freedom Mortgage moves for summary judgment on the ground that its reporting was accurate both in the first instance and throughout the subsequent inquiries. As a threshold issue, "'[t]o maintain a claim for failure to reinvestigate, a plaintiff must show

---

[3] At oral argument on the summary judgment motion, counsel for the Johnsons agreed that each of the defendants' two arguments provides an independent basis for summary judgment, meaning that if the Court found the information at issue to be accurate, it need not further explore the reasonableness of the investigation.

that the challenged item of information was, in fact, inaccurate.'" *Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220, 1234 (D. Minn. 2013) (quoting *Martin v. First Advantage Background Servs. Corp.,* 877 F. Supp. 2d 754, 761 (D. Minn. 2012)) (alteration in *Edeh*). The Court concludes that the Johnsons have failed to point to any evidence that would allow a reasonable jury to conclude that Freedom Mortgage reported inaccurate information about the Johnsons' account, and summary judgment in favor of Freedom Mortgage is appropriate on this ground.

It is uncontroverted that on April 28, 2020, Samantha Johnson obtained a cashier's check for $1,596.00 from Bell Bank that was then sent to Freedom Mortgage. It is undisputed that the check did not contain a check number, that the amount was slightly different from the Johnsons' monthly payment amount, and that 34 people named Samantha Johnson had accounts with Freedom Mortgage at that time. Furthermore, there is no dispute that Freedom Mortgage deemed the check nonconforming because it lacked necessary identifying information on the check, i.e., the loan number. And it is uncontested that Freedom Mortgage did not credit the amount on the April check to the Johnsons' account and ultimately returned the check to Bell Bank. After the check was returned to Bell Bank, the Johnsons then used the proceeds from the returned April payment to purchase a new cashier's check for their still-outstanding May mortgage payment six days later. The new check was made payable to Freedom Mortgage, and this time, the loan number appeared on the check itself. Freedom Mortgage then processed the check and applied it to the Johnsons' account on June 9, 2020. As a result, Freedom Mortgage reported that the Johnsons were late on their mortgage payment. These facts together,

11

which are undisputed, demonstrate that the challenged reporting was in fact accurate, and this precludes relief under the FCRA. *See, e.g.*, *Peoples*, 2018 WL 7020229, *5 (concluding that a furnisher's reporting of a repossession was correct and dismissing an FCRA suit); *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 29–30 (1st Cir. 2010) (finding that a § 1681s-2(b) claim against a furnisher requires an actual inaccuracy); *Anderson v. EMC Mortg. Corp.*, 631 F. 3d 905, 908 (8th Cir. 2011) (affirming a district court's grant of summary judgment on the ground that the reported information was accurate).[4] The Court concludes that there is no genuine dispute of material fact regarding the accuracy of Freedom Mortgage's reporting and, therefore, summary judgment is appropriate.

The Johnsons raise several arguments against summary judgement, but those challenges do not require a different result. First, the plaintiffs argue that there is a material

---

[4] The Johnsons attempt to distinguish the Eighth Circuit's decision in *Anderson* by correctly pointing out that the appellants there did not directly challenge the district court's determination that summary judgment was appropriate because the defendant's reporting had been accurate. However, the issue the appellant did raise was, in essence, a related variation of the same argument: they pointed out a new minor discrepancy between the record and the reported information beyond what the district court had considered. 631 F.3d at 908–09. In any case, both the district court opinion and the Court of Appeals opinion stand for the broad idea that an accurate report in the first instance precludes FCRA liability. *See id.* at 907–08 (explaining that the defendant argued the plaintiff's claims failed as a matter of law "[b]ecause [the] past due information was accurate when reported" and discussing the district court's reasoning that the defendant was entitled to summary judgment because it "accurately reported [initially], and continued to accurately report thereafter, that [plaintiff's] account was thirty days past due" for a two-month period); *id.* at 909 ("[Defendant] investigated, correctly determined that the reported account status was accurate, and verified that information to the CRAs. It's duties as a furnisher of information under the FCRA required no more").

dispute about whether they included a slip of paper with their loan number in the envelope with the April check. Admittedly, Freedom Mortgage challenges the credibility of Lea Johnson's deposition testimony on this point:

> As noted in the Plaintiffs' Response, Freedom has no record of such correspondence being received and disputes that the Plaintiffs included such correspondence with their April payment. This position is consistent with the Plaintiffs' initial discovery responses. Specifically, in Interrogatory responses and Responses to Requests for Admission served by the Plaintiffs on June 22, 2022, the Plaintiffs acknowledged that no additional documentation was sent with the check and claimed that Plaintiffs' account number was written on the envelope the check was mailed in. On the morning of the Plaintiffs' depositions, supplemental responses were served on Freedom claiming for the first time that additional documentation was mailed with the check.

[Reply Br., ECF No. 87 at 4]. However, though this dispute is genuine, it is not material. "A dispute over a fact is 'material' only if its resolution might affect the outcome of the suit under the governing substantive law." *Anderson v. Experian Info. Sols., Inc.*, No. 08-CV-5151(PJS/JJK), 2009 WL 3644923, at *2 (D. Minn. Nov. 2, 2009) (citing *Anderson*, 477 U.S. at 248), *aff'd sub nom. Anderson v. EMC Mortg. Corp.*, 631 F.3d 905 (8th Cir. 2011).

Whether a slip of paper was included in the envelope with the first check does not impact whether the reporting of the mortgage account as overdue was accurate. Freedom Mortgage clearly instructed its customers to put their loan numbers on payment checks and not to include separate correspondence with the payment. In fact, it is undisputed that Freedom Mortgage advised the Johnsons that these steps were needed "to avoid processing delays" and there is no question that Freedom Mortgage was permitted by law to impose reasonable requirements on the submission of payments. *See* 12 C.F.R. § 1026.10(b)(1)

13

(providing that creditors "may specify reasonable requirements for payments"). Indeed, a specific example of such a reasonable requirement is "that payments be accompanied by the account number." *Id.* § 1026.10(b)(2)(i).

Lea Johnson testified that she was aware of Freedom Mortgage's policies regarding payment and that she knew not to include additional paper in the envelope with her payment:

> **[Counsel]**: So it was a blank piece of paper and you wrote your names, the property address and the loan number?
> **Lea Johnson**: Correct.
> **[Counsel]**: Okay. Why did you include that piece of paper?
> **Lea Johnson**: Because I realized that the account number was not on the cashier's check.
> . . . .
> **Lea Johnson**: And you guys needed to know what loan number I had, so I included it in the check as well as on the outside of the envelope had my name and address.
> **[Counsel]**: Okay. So you understood at that time that the cashier's check should have had the loan number?
> **Lea Johnson**: Correct.

[Lea Johnson Dep. at 33–34]. And there is no dispute that the April check was returned uncashed to the issuing bank because the lack of account number prevented it from being attributed to an account. Under these circumstances, the presence or absence of the non-conforming slip of paper with the payment cannot be a matter that prevents summary judgment.

Second, the Johnsons argue that because they *sent* the payment on time, the reporting is inaccurate, even though it is undisputed that no payment was *credited* until

well after the due date.[5] Implicit in this argument is that Freedom Mortgage somehow mishandled the payment, rendering the lateness of the payment Freedom Mortgage's fault and the resulting reporting incorrect. But, as the record makes clear, to the extent there is any "fault" for the check being returned to Bell Bank instead of credited to the Johnsons' account, there is no evidence that Freedom Mortgage is to blame. Instead, the undisputed facts make clear that Freedom Mortgage did not credit the payment because there was no account number on the April check, which was compounded by the provision of an incorrect check number when the Johnsons' called to inquire about the past-due notice, and further compounded by the incorrect assertion during the inquiry call that the check had been cashed.

Furthermore, even if Freedom Mortgage were more responsible for mishandling the April check than the record suggests, that would not render the reporting inaccurate. In *Anderson*, the plaintiff, Chad Anderson, mailed his furnisher EMC Mortgage Company ("EMC") a check for his monthly mortgage payment. 631 F.3d at 906. Although the check was received and credited to Mr. Anderson's account, the check itself was then lost by EMC prior to being presented to his bank for payment. *Id.* EMC presented a substitute check for the December payment to Mr. Anderson's bank, but by that time Anderson had closed his bank account, leaving no funds to pay the check. *Id.* at 908. EMC then uncredited

---

[5] The Johnsons cite no authority for their implicit suggestion that sending payment itself satisfied their obligations under the Loan, nor that, as a matter of law, a payment should be deemed received simply because it was sent. The facts of this case demonstrate why such a rule would be unworkable: creditors would be held accountable for payments sent but never received, and for payments that were received but could not be credited or fulfilled.

15

the timely payment and reported to CRAs that Mr. Anderson's account was thirty days past due. *Id.* Despite Mr. Anderson's assertion that he was never thirty days late on his account and his argument that EMC was to blame for losing the check, the Court of Appeals affirmed summary judgment because the reporting itself was accurate. *Id.* at 608–09. The Court finds the reasoning articulated in *Anderson* persuasive here.

The Johnsons similarly sent the April check to Freedom Mortgage for their May 2020 statement. However, because the April check was nonconforming, Freedom Mortgage was unable to process the Johnsons' payment. Freedom Mortgage ultimately told the Johnsons to submit another payment towards their May 2020 balance, but they did not do so until after 30 days had passed. Therefore, Freedom Mortgage's reporting that the Johnsons were late on their mortgage payment was accurate, and summary judgment is appropriate on accuracy grounds.

Third, in reliance on a section in their expert report, the Johnsons suggest that the Court should hold Freedom Mortgage to a "maximum possible accuracy" standard, and that under this lens the reporting here was inaccurate. [Thomas Tarter Report, Ex. F, ECF No. 86-6 ("[T]he industry standard calls for maximum possible accuracy which requires quality control programs to detect inaccurate reporting of consumer file data")]. This argument is unpersuasive because the language at issue actually comes from a provision of the FCRA that establishes requirements for credit reporting agencies, not furnishers. 15 U.S.C. § 1681e(b); *see also Lynch v. Experian Info. Sols., Inc.*, No. 20-CV-2535 (KMM/JFD), 2022 WL 16857078, at *10 (D. Minn. Nov. 10, 2022) ("In relevant part, the FCRA provides that when 'a *consumer reporting agency* prepares a consumer report it

16

shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.'") (quoting 15 U.S.C. § 1681e(b)) (emphasis added). In contrast, furnishers like Freedom Mortgage are prohibited from "furnishing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(b). And the Johnsons point to no authority, binding or otherwise, that applies the "maximum possible accuracy" lens to a furnisher like Freedom Mortgage.

Fourth, the Johnsons encourage the Court to find that even "technically accurate" credit reporting can still give rise to FCRA liability for furnishers if the information creates a materially misleading impression. [Pls.' Resp. 7–8, ECF No. 85]. Again, this argument is unavailing. Critically, the Eighth Circuit has never adopted the suggested rule, and the Johnsons rely on non-binding authority from other jurisdictions in support of this argument. *See Peoples*, 2018 WL 7020229 (noting that this standard derives from out-of-circuit authority).[6] Indeed, though it did not consider whether to apply a "technically accurate but misleading" standard, the Eighth Circuit's decision in *Anderson* hints that such a standard does not apply to cases involving data furnishers like Freedom Mortgage. As described

---

[6] In *Taylor v. Tenant Tracker*, 710 F.3d 824, 827 n. 2 (8th Cir. 2013), the Eighth Circuit noted that there was no binding precedent on the "technical accuracy" standard, and the court explained that a previous panel decision on the issue, *Wilson v. Rental Research Services*, 165 F.3d 642 (8th Cir. 1999), had been vacated *en banc* without resolving the question. Notably, both *Taylor* and *Wilson* involved credit reporting agencies, governed by the "maximum possible accuracy" standard, rather than furnishers.

above, in *Anderson*, like here, the debtor mailed the payment on time. 631 F.3d at 906. And in *Anderson*, like here, the payment was ultimately not credited to the debtor's account, though the "mistake" there was arguably the creditor's as much as the debtor's. Despite this, the *Anderson* court affirmed a grant of summary judgment in favor of the creditor on the ground of accuracy, technical or otherwise. *Id.* at 908–09. But even if Plaintiffs could point to controlling authority for the "technically accurate but materially misleading" standard in this Circuit, the Court would conclude that the information here was not misleading.[7] The fact that the Johnsons tried unsuccessfully to pay their bill on time does not make the report that they failed to do so misleading.

Fifth and finally, the Johnsons rely on the district court decision from *Hrebal v. Nationstar Mortgage*, 385 F. Supp. 3d 849 (D. Minn. 2019), to support their position that the reporting here was in fact inaccurate. But *Hrebal* does not require a different result here. Most critically, *Hrebal* involved a very complex but equally distinct set of facts where there was a significant dispute regarding whether the reporting at issue was inaccurate, accurate but incomplete, or misleading. *Id.* at 851–52. The facts before this Court are much more straightforward: although the Johnsons tried to pay their bill on time, they were unsuccessful. This fact was proven by the investigations done in response to the inquiries sent by the CRAs in 2020 and 2021, and it has been more fully proven by the discovery

---

[7] This case stands in contrast to *Beseke v. Equifax Information Services LLC*, 420 F. Supp. 3d 885, 900–03 (D. Minn. 2019), which not only involved a CRA rather than a furnisher, but it involved the omission of relevant information regarding a previous delinquency. Unlike here, there was a serious dispute about whether the missing information was so critical that it rendered the reported information false.

18

and summary judgment record in this case. There is no lack of clarity or grey area in the reporting here, as there arguably was in *Hrebal*, so it is of little relevance in this matter.

For these reasons, the Court finds that summary judgment in favor of Freedom Mortgage is appropriate because there is no material dispute undermining a conclusion that the challenged credit reporting was in fact accurate.

## CONCLUSION and ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Freedom Mortgage's Motion for Summary Judgment [ECF No. 80] is **GRANTED** and this case is **DISMISSED WITH PREJUDICE.**

**Let judgment be entered accordingly.**

Date: August 1, 2024                             *s/Katherine Menendez*
                                                 Katherine Menendez
                                                 United States District Court